# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOHN JASON CHEEK,<br><br>      Petitioner,<br><br>vs.<br><br>SCOTT CROWTHER,<br><br>      Respondent. | **MEMORANDUM DECISION AND ORDER OF DISMISSAL**<br><br><br>Case No. 2:14-cv-845-DB<br><br>District Judge Dee Benson |

THIS MATTER IS BEFORE THE COURT on Petitioner John Cheek's petition for writ of habeas corpus. 28 U.S.C.S. § 2254 (2017). The Court has carefully considered the petition, Respondent's answer, Petitioner's objections, and relevant law. Because Petitioner is pro se, the Court interprets his petition liberally. Nevertheless, he must still meet all required elements to state a claim for relief. *See United States v. Lee Yang Lor*, 706 F.3d 1252, 1256 (10th Cir. 2013).

Now being fully advised, the Court concludes that Petitioner's claims are either procedurally defaulted or invalid under the federal habeas standard of review. The petition is therefore dismissed.

### FACTUAL AND PROCEDURAL BACKGROUND

Based on a K-Mart heist, Petitioner was charged with aggravated robbery. At trial, Officer Gordon testified (consistent with his police report) that Petitioner admitted to using a black airsoft gun that looked real. He said Petitioner told him that Petitioner threw the gun into a

gas-station dumpster near the K-Mart after the robbery. Gordon testified that he did not find the gun in the dumpster. Petitioner testified that he neither pointed a gun at store employees nor told Officer Gordon that he used an airsoft gun. Petitioner asserted instead that he had a black phone in his hands that he pointed at employees.

The jury convicted Petitioner of aggravated robbery and the trial court imposed an indeterminate sentence of five years to life at the Utah State Prison.

Petitioner timely appealed, with one ineffective-assistance-of-counsel claim. He argued that his trial attorney had an actual conflict of interest that adversely affected his representation and so his conviction should be overturned. To develop the factual record needed to support his claim, Petitioner made a Utah Rule of Appellate Procedure 23B motion. The motion sought a remand from the Utah Court of Appeals to the district court to let the court hold an evidentiary hearing where Petitioner could present the non-record evidence he attached to his motion (e.g., affidavits from himself, trial counsel, and a potential witness, Katherine Zamora).

Petitioner's affidavit reiterated his denials at trial that he used an airsoft gun that he later threw in a dumpster. But he also alleged extra-record evidence that he learned of Officer Gordon's police report only the morning of trial, and that, if he and counsel had time to prepare witnesses based on the report, he would have asked trial counsel to call Zamora to testify, because she was with him during the time he allegedly possessed and disposed of the gun.

Trial counsel's affidavit alleged that he concurrently represented Zamora in an unrelated case, and he had explored possibly calling Zamora to testify for Petitioner. But after investigating Zamora's involvement, counsel made a strategic decision not to call her as a witness.

2

Zamora alleged in her affidavit that, sometime on the day of the robbery, she met up with Petitioner and drove him around, that she was with him for the rest of the day and overnight, and that she never saw Petitioner with a gun--let alone dispose of a gun--during that time. Zamora stated that, though she would have been willing to testify for Petitioner, she would have wanted an attorney to advise her first. Finally, Zamora alleged that she was concurrently represented by Petitioner's trial counsel in an unrelated case, that she asked counsel about Petitioner's case, and that counsel told her it was unnecessary for her testify.

Based on the extra-record evidence, Petitioner urged that his trial attorney had a conflict of interest by representing Petitioner and Zamora at once. He said as much because, while Zamora could have testified for him, she also possibly faced charges as an accomplice or for obstructing justice if she testified. He argued that trial counsel then had a conflict because counsel's duty of loyalty to him was contrary to counsel's duty of loyalty to Zamora. The conflict of interest, Petitioner argued, prevented counsel from calling Zamora to testify for him.

The Utah Court of Appeals summarily rejected Petitioner's argument and affirmed his conviction. Petitioner then sought a rehearing. He asked the court of appeals to reconsider his argument in terms of actual conflict of interest, rather than characterizing his argument as an ineffective-assistance claim for failing to call a potential witness. He also raised a new claim that counsel was ineffective for not seeking a continuance of the trial once counsel became aware of the police report and that Officer Gordon was going to testify.

In denying Petitioner's rehearing petition, the court explained that Petitioner's allegations were insufficient to show that trial counsel knew of Zamora's value as a witness to rebut Officer

3

Gordon's testimony. No conflict of interest could exist because no choice between clients existed. Moreover, the court of appeals determined that, even if trial counsel were aware of Zamora's possible testimony, Petitioner failed to show an actual conflict of interest. That is, he did not show a choice to advance Zamora's interests over Petitioner's--i.e., he did not show that Zamora could have faced criminal charges based on her alleged testimony. Finally, the court of appeals refused to consider Petitioner's new claim that counsel was ineffective for not seeking a continuance. The court stated that the claim was not new; could have been included in Petitioner's brief; arguments before the court were ruled upon; and the new claim was beyond the rehearing petition's scope.

Petitioner sought from the Utah Supreme Court certiorari review, which was denied on January 21, 2014. *See State v. Cheek*, 320 P.3d 676 (Utah 2014). He timely filed a state post-conviction petition challenging appellate counsel's representation and raising the identical trial-counsel-ineffectiveness claim he presented in his opening appellate brief. The state district court dismissed the petition. Petitioner did not appeal.

## DISCUSSION

### A. PROCEDURAL DEFAULT

Petitioner argues his trial attorney was ineffective for not requesting a continuance when he received new discovery from the State on the trial's first day. He asserts that because counsel was unaware until then that Officer Gordon was going to testify, counsel should have requested a continuance. Petitioner contends that, instead of requesting a continuance, counsel had him take the witness stand--unprepared--to rebut Officer Gordon's testimony that Petitioner confessed to

4

using an airsoft gun during the robbery. Petitioner also alleges prosecutorial misconduct because the prosecutor did not timely disclose Officer Gordon's police report about Petitioner telling Officer Gordon that he had an airsoft gun during the robbery and pointed it at K-Mart employees. These claims are both procedurally defaulted.

A state prisoner's federal habeas petition must show exhaustion of state-court remedies. *See* 28 U.S.C.S. § 2254(b)(1)(A) (2017). "[T]o exhaust his state remedies, a . . . petitioner must have first fairly presented the substance of his federal habeas claim to state courts." *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)). Claims must be "'properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack.'" *Brown v. Shanks*, 185 F.3d 1122, 1124 (10th Cir. 1999) (quoting *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994)).

Here, Petitioner never properly presented to the highest state court--either on direct appeal of his conviction or in a state post-conviction proceeding--his claims that counsel was ineffective for not requesting a continuance, and that the prosecutor did not timely disclose Officer Gordon's report. Nowhere are these claims addressed in his opening appellate brief or in his Rule 23B motion. While he belatedly raised the counsel-ineffectiveness claim in his rehearing petition, the Utah Court of Appeals said it could have been included in his brief, that raising it in the rehearing petition was beyond the rehearing's scope, and that the court of appeals had "ruled on the arguments before it." In other words, the court of appeals never considered the improperly raised counsel-ineffectiveness claim. Because Petitioner's counsel-ineffectiveness

and prosecutorial misconduct claims were never "properly presented to the highest state court," they were never exhausted.

When a petitioner would now be procedurally barred from raising his unexhausted claim in state court, the claim is "technically exhausted" for purposes of federal habeas review. *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006) ("[I]f state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted."); *accord Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("[H]abeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion [because] there are no state remedies any longer 'available' to him."). Here, state-court remedies are no longer available to Petitioner.

Petitioner could have raised his counsel-ineffectiveness and prosecutorial misconduct claims on direct appeal but did not. And the time for seeking direct appellate review of those claims expired years ago. *See* Utah R. App. P. 4(a) ("In a case in which an appeal is permitted as a matter of right from the trial court to the appellate court, the notice of appeal . . . shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from."). Under Utah's Post-Conviction Remedies Act (PCRA), once a defendant has exhausted his legal remedies on direct appeal, his only avenue for challenging his conviction in state court is by filing a timely post-conviction petition. *See* Utah Code Ann. § 78B-9-102(1) (2017) (establishing PCRA as only remedy for one challenging criminal conviction or sentence and exhausting any other legal remedies like direct appeal).

Petitioner timely filed a state post-conviction petition. But he did not attack trial counsel's decision not to seek a continuance or the prosecutor's alleged untimely disclosure of Officer Gordon's report. Even if he had, he never appealed the denial of his post-conviction petition. Further, if Petitioner were to now file a successive post-conviction petition, the claims would be procedurally barred. Under PCRA, a "person is not eligible for relief . . . upon any ground that . . . could have been but was not raised at trial or on appeal." Utah Code Ann. § 78B-9-106(1)(c) (2017).

Both Petitioner's claims could have been raised on appeal. He knew during trial that his attorney had not sought a continuance. And he knew that the prosecutor had not disclosed Officer Gordon's report until right before trial. Petitioner thus could have raised his claims in his opening appellate brief. Because he did not, they would now be procedurally barred if raised in a successive state-post-conviction petition. Because Petitioner's state-court remedies on his counsel-ineffectiveness and prosecutorial misconduct claims are no longer open to him, these claims are "technically exhausted."

But "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford*, 548 U.S. at 93. That is, if the "reason a petitioner has exhausted his state remedies is because he has failed to comply with a state procedural requirement for bringing the claim, there is a further and separate bar to federal review, namely procedural default." *Parkhurst v. Shillinger*, 128 F.3d 1366, 1370 (10th Cir. 1997); *see also Coleman*, 501 U.S. at 750

(holding, when federal claim defaulted in state court on independent and adequate state procedural rule, federal review of claim barred unless petitioner shows cause for default and actual prejudice). Because Petitioner did not properly present his claims on direct appeal, and they would now be procedurally barred under the PCRA if raised in a successive post-conviction petition, his claims are procedurally defaulted and not entitled to federal review.

Petitioner may overcome procedural default, but only by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Engle v. Isaac*, 456 U.S. 107, 129 (1982) (stating, when "procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice"); *Dulin v. Cook*, 957 F.2d 758, 760 (10th Cir. 1992) (same). To meet the "cause" standard, Petitioner must show that "some objective factor external to the defense impeded his compliance with Utah's procedural rules." *Dulin*, 957 F.2d at 760 (citations omitted). "As for prejudice, a petitioner must show 'not merely that the errors of the trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Richie v. Sirmons*, 563 F. Supp. 2d 1250, 1272 (N.D. Okla. 2008) *aff'd sub nom. Richie v. Workman*, 599 F.3d 1131 (10th Cir. 2010) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Importantly, Petitioner "has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001); *see also United States v. Brown*, 37 F.3d 1510 (10th Cir. 1994) (refusing to reach merits of claim when petitioner did

not carry "burden of showing either cause and prejudice or a fundamental miscarriage of justice"). Nowhere in his habeas petition does Petitioner mention, let alone establish, that cause and prejudice or a miscarriage of justice exist that would allow federal habeas review of his procedurally defaulted claim.

The Court therefore dismisses Petitioner's claims that counsel was ineffective for not requesting a continuance, and that the prosecutor did not timely disclose Officer Gordon's report.

## B. INEFFECTIVE ASSISTANCE DUE TO CONFLICT OF INTEREST

### 1. Standard of Review

The standard of review to be applied in federal habeas cases is found in § 2254, of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which this habeas petition is filed. It states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.S. § 2254(d) (2017). "Subsection (d)(1) governs claims of legal error while subsection (d)(2) governs claims of factual error." *House v Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).

The Court's inquiry centers on whether the court of appeals's rejection of Petitioner's claims "was contrary to, or involved an unreasonable application of, clearly established Federal

law." 28 U.S.C.S. § 2254(d)(1) (2017). This "'highly deferential standard,'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citations omitted), is "'difficult to meet,' because the purpose of AEDPA is to ensure that federal habeas relief functions as a '"guard against extreme malfunctions in the state criminal justice systems,"' and not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43-44 (2011) (citations omitted). The Court is not to determine whether the court of appeals's decision was correct or whether this Court may have reached a different outcome. *See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). And, "[t]he petitioner carries the burden of proof." *Cullen*, 131 S. Ct. at 1398.

Under *Carey v. Musladin*, 549 U.S. 70 (2006), the first step is determining whether clearly established federal law exists relevant to Petitioner's claims. *House*, 527 F.3d at 1017-18. Only after answering yes to that "threshold question" may the Court go on to "ask whether the state court decision is either contrary to or an unreasonable application of such law." *Id.* at 1018.

> [C]learly established [federal] law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*Id.* at 1016. In deciding whether relevant clearly established federal law exists, this Court is not restricted by the state court's analysis. *See Bell v. Cone*, 543 U.S. 447, 455 (2005) ("[F]ederal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003)

("[A] state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'") (citation omitted).

If this threshold is overcome, this Court may grant habeas relief only when the state court has "unreasonably applied the governing legal principle to the facts of the petitioner's case." *Walker v. Gibson*, 228 F.3d 1217, 1225 (10th Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). This deferential standard does not let a federal habeas court issue a writ merely because it determines on its own that the state-court decision erroneously applied clearly established federal law. *See id.* "'Rather that application must also be unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 411). Indeed, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington v. Richter,* 131 S. Ct. 770, 785 (emphasis in original) (quoting *Williams*, 529 U.S. at 410).

This demanding standard was meant to pose a sizable obstacle to the habeas petitioner. *Id.* at 786. Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id*. It maintains power to issue the writ when no possibility exists that "fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents. It goes no farther." *Id.* To prevail in federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87. Against this backdrop, the Court now applies the standard of review to this case's circumstances.

## 2. Application of Standard of Review

Petitioner urges this Court to overturn the Utah Court of Appeals's decision that his federal constitutional rights were not violated when Petitioner's counsel represented both him and Ms. Zamora at once, while she was a possible witness in Petitioner's case. He argues that his trial attorney had a conflict of interest that adversely affected his representation. He states that Zamora could have testified that she never saw him with a gun and did not see him throw a gun in the dumpster but was kept from doing so by their shared counsel.

Noting again that review is tightly circumscribed by the federal standard of review, this Court observes that the court of appeals initially did not cite to any governing case law in analyzing Petitioner's challenges. The court's first analysis was:

> A remand is available only upon "a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective," including facts that show "the claimed deficient performance" and "the claimed prejudice suffered by the appellant as a result of the claimed deficient performance." Utah R. App. P. 23B (a), (b).
> Cheek argues that trial counsel was ineffective for failing to call a potential witness because of a conflict of interest not appearing in the record on appeal. However, Cheek's own affidavit establishes that the potential witness, Katherine Zamora, was not called because the report and testimony at issue were not known until shortly before the day of trial and there was not time to call the additional witness. Cheek states that "[p]rior to the morning of trial I was not aware that Officer Gordon would be a witness against me, nor was I aware he had written a report claiming I had confessed to using an airsoft pistol." Additionally, he states that "[i]f we had time to prepare witnesses related to Gordon's report I would have asked to have Kathrine Zamora, among others, testify." These facts do not establish deficient performance of counsel in failing to call the proposed witness. Furthermore, the allegations regarding a conflict of interest are speculative given

> that there was not time to call the potential witness. Accordingly, remand is not warranted.

*State v. Cheek*, No. 20100927-CA, slip op. at 1 (Utah Ct. App. Aug. 26, 2013).

On rehearing the court of appeals--citing a couple Utah Supreme Court cases--went on to say:

> Cheek fails to allege non-speculative facts that establish an actual conflict of interest. "To establish actual conflict of interest, [a defendant] must demonstrate that 'counsel was forced to make choices advancing other interests to the detriment of his client.'" *Lafferty v. State*, 2007 UT 73, ¶ 62, 175 P.3d 530 (quoting *Taylor v State*, 2007 UT 12, ¶ 124, 156 P.3d 739). Cheek has not made this showing. First, his affidavit is insufficient to establish that trial counsel knew of Zamora's possible testimony and its relevance. Cheek asserts that on the day of trial he told trial counsel that "there would be witnesses who could disprove Gordon's testimony," and that "[i]f we had time . . . I would have asked to have Kathrine Zamora, among others, testify." He does not assert that he told trial counsel specifically that Zamora was one such witness who could rebut Gordon's testimony. If trial counsel did not know of Zamora's possible testimony, then there is no conflict of interest because there is no choice between clients to make.
>
> Second, even it trial counsel was aware of Zamora's possible testimony, Cheek has not established that there was an actual conflict of interest because he has not demonstrated that there was any choice to advance Zamora's interests over his own. Cheek asserted vaguely that Zamora might risk self-incrimination if she testified and that trial counsel was therefore protecting Zamora to the detriment of Cheek. However, there is nothing that indicates such a choice was necessary. Zamora's testimony would be simply that she did not see Cheek dispose of a gun. Cheek asserts that Zamora could be subject to accomplice liability or obstruction of justice charges because of her testimony, but her presence with Cheek after the robbery was already known to the police. There has been no specific allegation of how her testimony would put her at any risk. Given the facts in the record and in the supporting documentation for the rule 23B motion, the allegation

> of a conflict of interest based on concurrent representation of
> Cheek and Zamora is unsupported.

*Cheek v. State*, No. 20100927-CA, slip op. at 1 (Utah Ct. App. Oct. 9, 2013).

### a. Existence of Clearly Established Supreme Court Precedent

Although the court of appeals's did not cite or refer to Supreme Court cases, *see Bell*, 543 U.S. at 455; *Mitchell*, 540 U.S. at 16, the familiar two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), is easily identifiable in its analysis: (1) "reasonableness under prevailing professional norms"; and, (2) prejudice to the defense caused by counsel's deficient performance." *Id*. at 687-88. The prejudice element requires a showing that errors were so crucial as to "rob the petitioner of a fair proceeding, with a reliable, just result." *Id*. Further, the two Utah Supreme Court cases cited by the Utah Court of Appeals on rehearing refer explicitly to *Strickland*. *Lafferty*, 2007 UT 73, at ¶ 62; *Taylor,* 2007 UT 12, at ¶ 46. One of those cases quotes *Strickland*'s words that apply specifically to conflict-of-interest issues: Prejudice is presumed only if a defendant shows that "'an actual conflict of interest adversely affected his lawyer's performance.'" *Lafferty*, 2007 UT 73, at ¶ 62 (quoting *Strickland*, 466 U.S. at 692).

Still, this Court's independent review of Supreme Court precedent reveals no cases in which the Supreme Court has been faced (regarding a *Strickland* ineffective-assistance claim) with the exact facts of this case: a defense attorney representing two different defendants in two different criminal cases, with one of the defendants as a potential witness in the other defendant's case. This absence of Supreme Court precedent, on the same facts, could be the end of this Court's inquiry. However, the Court goes on to part two of the analysis.

14

### b. Unreasonable Application of Precedent

Here, the Court limits itself to discussing whether the Utah Court of Appeals unreasonably applied *Strickland*'s general language regarding conflict of interest. Specifically, considering the deficient performance and prejudice prongs, the Court focuses on whether Petitioner showed the state court "that counsel 'actively represented conflicting interests.'" In arguing that it did, Petitioner completely ignores the federal statutory habeas standard of review. He merely insists, without relevant analysis, that his constitutional rights were violated.

However, based on its careful reading of the court of appeals's decision in this case, together with its review of United States Supreme Court cases, this Court can find no hint that the court of appeals did not apply generally relevant Supreme Court precedent. The Supreme Court set forth the general rule of *Strickland*, used by the court of appeals, but--again--has not clearly answered the same federal question before the Utah courts did. *See Wright v. Van Patten*, 552 U.S. 120, 124-26 (2008).

First, the court of appeals was not unreasonable in applying *Strickland*'s general principle as to deficient performance. Based on Petitioner's affidavit, counsel would not have known until morning of trial that Officer Gordon would testify against Petitioner that he had and discarded a gun. How could counsel have been deficient then in not calling a witness to potentially combat that testimony? And, because no time existed to call Zamora, the court of appeals held that any alleged conflict of interest was merely speculative. *See United States v. Romero-Gallardo*, 113 F. App'x 351, 354 (10th Cir. 2004) (concluding claim based on "sheer speculation . . . does not rise to the level of a constitutional claim"). Further, whatever counsel did know about Zamora's

15

potential as a witness, he swore in his affidavit that he investigated that potential and made the strategic decision not to use her. Such a decision is generally given wide latitude by the courts and Petitioner has not shown that the Utah Court of Appeals unreasonably accepted counsel's explanation of his strategic decision.

Moreover, in its order denying Petitioner's rehearing motion, the court of appeals also concluded that Petitioner's allegations were insufficient to show that trial counsel knew of Zamora's value as a witness to rebut Officer Gordon's testimony. If trial counsel did not know of the potential testimony's value, then there could be no conflict of interest because counsel would not have needed to choose between clients. And even if trial counsel knew of Zamora's possible testimony, the court of appeals held that Petitioner still did not show a conflict of interest. Petitioner asserted in his affidavit that Zamora could be subject to accomplice liability or obstruction of justice charges because of her testimony, but her presence with Petitioner after the robbery was already known to police. There were no specific allegations of how her testimony would have put her at any risk of criminal charges, nor of the police threatening to charge her with anything about the robbery. And without this information, Petitioner's allegation of a conflict of interest--and therefore ineffective representation--was unsupported.

Finally, as to *Strickland*'s prejudice prong, Petitioner has not suggested how failing to present Zamora's testimony may have prejudiced him. Considering that Zamora was not even around until sometime after the robbery and could have only testified that she merely never saw Petitioner with a gun or discarding the gun, the factfinder could very well not seen Zamora's testimony as useful, let alone dispositive. The gun could have been disposed of before she

16

showed up after the robbery or when Zamora was distracted during the period of day and night hours in which she was with Petitioner. And Petitioner already had his own and Officer Gordon's testimony to state the gun either did not exist or was never found after the robbery. Even Petitioner's proposed version of Zamora's (potentially cumulative) testimony would not necessarily lead a factfinder to conclude that her perspective was some kind of lock, assuring a not-guilty verdict. Failure to present Zamora's testimony does not represent any sort of extreme malfunction of the trial system.

Based on its conclusion that Petitioner's proffered facts were not enough to show that counsel performed deficiently, the court of appeals was not unreasonable in concluding that Petitioner failed to establish his counsel-ineffectiveness claim. Because fair-minded jurists could agree with the Utah Court of Appeals that trial counsel's performance was not ineffective, Petitioner has not carried his burden to show that he is entitled to habeas relief.

**ORDER**

IT IS HEREBY ORDERED that Petitioner's action is DISMISSED with prejudice. This case is CLOSED.

DATED September 8, 2017.

BY THE COURT

_____
JUDGE DEE BENSON
United States District Court